UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UPSTATE NEW YORK CARPENTERS PENSION,
HEALTH, and ANNUITY FUNDS, by Earl Hall and
Gary Toth, as Trustees; EMPIRE STATE CARPENTERS
APPRENTICESHIP COMMITTEE, by John J. Fuchs
and Joseph Oliveri, as Trustees; and EMPIRE STATE
REGIONAL COUNCIL OF THE UNITED
BROTHERHOOD OF CARPENTERS and JOINERS OF
AMERICA, REGION 3, CARPENTERS LOCAL NO. 747,
by Gary Toth, as Senior Council Representative,

      Plaintiffs,

  v.              5:05-CV-1029
                  (FJS/GHL)
McCAREY CONTRACTING GROUP, INC.
and CHERYL S. SMITH, individually,

      Defendants.
_____

**APPEARANCES**            **OF COUNSEL**

**BLITMAN & KING LLP**        **DANIEL E. KORNFELD, ESQ.**
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204
Attorneys for Plaintiffs

**McCAREY CONTRACTING GROUP, INC.**  **NO APPEARANCE**
**and CHERYL S. SMITH, individually**

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**

Defendant McCarey Contracting Group, Inc. ("Defendant Corporation") is a domestic business corporation incorporated under the laws of New York State. Defendant Cheryl S. Smith ("Defendant Smith") was President, Manager, and/or controlling shareholder of Defendant Corporation at all times relevant to this action. Defendant Corporation is a party to a Collective Bargaining Agreement ("CBA") with Empire State Regional Council of Carpenters, Local Union No. 747 ("the Union").[1]

Under the terms of the CBA, Defendant Corporation was required to pay stipulated amounts to the Upstate New York Carpenters Pension, Health, and Annuity Funds ("the Funds") for each hour that its employees who were covered by the CBA worked. The CBA further required Defendant Corporation to deduct from each employee's wages a specified amount of money and then send that money to the Union as member dues. Plaintiffs contend that, in violation of the CBA, Defendant Corporation and Defendant Smith (collectively "Defendants") did not remit the aforementioned deductions and dues from January 2004 through December 2005.

As a result of Defendants' failure to remit payment, Plaintiffs filed this action on August 15, 2005, s*ee* Dkt. No. 1, seeking not only the amount of the contributions and deductions that Defendants failed to remit during the relevant period but also

---

[1] The Funds, established pursuant to the CBA, are multiemployer plans within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(37), and are employee benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(3).

> (1) interest on unpaid and untimely paid Pension, Health, and Annuity Funds contributions, at the rate of twelve percent (12%) per annum, compounded daily from the date the contributions were due; plus (2) the greater of interest on the unpaid and untimely paid . . . Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on unpaid and/or untimely paid Training Fund contributions at the best interest rate charged by Fleet Bank or such bank determined by the Trustees or the Funds' depository to be substantial and responsible commercial borrowers as of the date of the Employer's default in contributions to the Training Fund provided, however, that such rate shall not be less than 6% per annum; plus (4) liquidated damages equal to the greater of interest on those unpaid Training Fund contributions or liquidated damages in an amount of twenty percent (20%) of the unpaid contributions; plus (5) interest on the unpaid dues deductions, I.A.P. and U.B.C. monies, at the rate of nine percent (9%) per annum; plus (6) costs and fees of collection, auditing fees and attorneys' and paralegal fees and costs.

*See id.* at ¶ 22.

In total, Plaintiffs seek a judgment against Defendants, jointly and severally, in the amount of $94,323.75 and an additional amount of $18,503.31 against Defendant Corporation, plus post-judgment interest on the entire judgment in accord with 28 U.S.C. § 1961(a).

Plaintiffs served Defendants with the summons and complaint on September 2, 2005. *See* Dkt. No. 4. Defendants failed to respond; and, on October 14, 2005, Plaintiffs requested and the Clerk of the Court entered notice of Defendants' default. *See* Dkt. Nos. 5, 7. Currently before the Court is Plaintiffs' motion for entry of a default judgment.

## II. DISCUSSION

**A.     Default Judgment**

Under Rule 55(b), a court may enter a default judgment where a party fails to respond to a plaintiff's complaint. *See* Fed. R. Civ. P. 55(b). As a prerequisite to the court granting a default judgment, the clerk of court must enter a notice of default. *See id.* Moreover, when a court enters a default judgment against a defendant, "the defendant is deemed to have admitted to the truth of the well-pleaded allegations [in] the compliant." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit & Training Funds v. B.B.L. Constructors, Inc.*, 825 F. Supp. 13, 17 (N.D.N.Y. 1993) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049, 122 L. Ed. 2d 357 (1993)).

**B.     ERISA**

Under ERISA's statutory framework, "[e]very employer who is obligated to make contributions to a mulitemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. When an employer fails to make such required contributions, multiemployer-plan fiduciaries can file a civil action to enforce the provisions of the plan and to obtain equitable relief. *See* 29 U.S.C. § 1132. Moreover, ERISA provides that, where a violation of § 1145 occurs, the court must award the mulitemployer plan

delinquent contributions, interest, liquidated damages, costs, and attorney's fees. *See* 29 U.S.C. § 1132(g)(2).

The CBA required Defendant Corporation to pay stipulated amounts to Plaintiffs' mulitemployer plans for each hour that its employees who were covered by the CBA worked. *See* Plaintiffs' Complaint at ¶ 19. Additionally, the CBA required Defendant Corporation to deduct from its employees' wages a specified amount of money which Defendants were then required to remit to the Union as fringe-benefit contributions, union dues, and I.A.P. and U.B.C. monies. *See id.* at ¶ 20. According to Plaintiffs, Defendant Corporation has failed to remit these contributions, deductions and other monies owed to Plaintiffs as required under the CBA, the Trusts, and the Collections Policy. *See id.* at ¶ 21.

In light of Plaintiffs' well-pleaded allegations, the Court finds that Defendants were bound by the terms of the CBA, the Trusts, and the Collections Policy; and, therefore, the Court will rely upon these documents to determine the amount of damages to which Plaintiffs are entitled.

### C. Defendant Smith's Personal Liability

According to Plaintiffs, Defendant Smith is a fiduciary of the mulitemployer plan's assets; and, as such, she is personally liable for Defendant Corporation's failure to remit fringe-benefit contributions to the plan. *See* Plaintiffs' Complaint at ¶¶ 33-49. It is well-established that, under ERISA, """any person who is a fiduciary" and who breaches [her] fiduciary obligations "shall be personally liable to make good to such plan any losses to the plan.""""

-5-

*Coleman v. BMC Constr. Corp.*, No. 05 Civ. 6224, 2006 WL 851148, *5 (S.D.N.Y. Mar. 31, 2006) (quotation omitted). In this case, by virtue of Defendant Smith's failure to answer the complaint, she admits that she was a plan fiduciary and is therefore personally liable for Defendant Corporation's failure to remit fringe-benefit contributions to the plan.

Accordingly, the Court finds that Defendant Smith is personally liable, as a plan fiduciary, for the delinquent and unpaid contributions owed to the Funds; and, therefore, the Court finds her jointly and severally liable with Defendant Corporation for those amounts owed, as well as for attorney's fees and costs and for audit costs. *See, e.g., Bricklayers Dist. Council Welfare Fund v. Pony Masonry Constr. Co., Inc.*, No. 92 Civ. 1663, 1995 WL 693262, *1-*4 (S.D.N.Y. Nov. 22, 1995) (holding defendant corporation and defendant fiduciary jointly and severally liable for unpaid contributions, interest on unpaid contributions, liquidated damages, and attorney's fees and costs).

**D.    Judgment Amount**[2]

*1. Delinquent and Unpaid Contributions*

As previously noted, pursuant to 29 U.S.C. § 1132 and the CBA, Defendants are liable to Plaintiffs for delinquent and unpaid fringe-benefit contributions and dues deductions. A review of Plaintiffs' records demonstrates that Defendants owe Plaintiffs **$74,419.99** in delinquent and unpaid contributions and dues deductions; and, therefore, the Court awards Plaintiffs this

---

[2] Plaintiffs do not seek judgment against Defendant Smith for contributions and dues related to the Training Fund.

amount.

### 2. *Interest*

Under the Funds' Collections Policy, the interest rate applicable to delinquent contributions is twelve-percent per annum compounded daily. *See* Plaintiffs' Complaint at ¶ 22. In addition, the interest rate applicable to delinquent contributions and delinquent I.A.P. and U.B.C. payments is nine-percent per annum. *See id.* The interest rate applicable to the delinquent contributions to the Training Fund is the best interest rate charged by Fleet Bank or such other bank at the date of default but not less than six-percent per annum. *See id.* Using these rates, Plaintiffs calculate that Defendants owe them **$12,619.50** in interest as of May 1, 2006. Accordingly, the Court awards Plaintiffs interest on delinquent contributions to the Funds, dues deductions, and I.A.P. and U.B.C. payments in the requested amount.

### 3. *Liquidated Damages*

Under the Funds' Collection Policy and ERISA, the Funds are entitled to the greater of the amount of interest on the unpaid contributions or twenty-percent of the unpaid contributions in liquidated damages. *See* Plaintiffs' Complaint at ¶ 22. Similarly, the Training Fund entitles Plaintiffs to the same amount of liquidated damages. *See id.* Plaintiffs' records indicate that Defendants owe them **$17,465.21** in liquidated damages. Accordingly, the Court awards Plaintiffs liquidated damages in the requested amount.

**E.     Attorney's Fees and Costs**

Under 29 U.S.C. § 1132(g), a successful plaintiff is entitled to those attorney's fees and costs that the court determines to be reasonable. The court calculates attorney's fees "by multiplying the number of billable hours that the prevailing party's attorneys spend on the case by 'the hourly rate normally charged for similar work by attorneys of like skill in the area.'" *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1140 (2d Cir. 1983) (quotation omitted). "The reasonable hourly rate must be 'in line with those prevailing in the community . . . .'" *N.Y.S. Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.*, No. 98 CV 1902, 2004 WL 437474, *2 (N.D.N.Y. Feb. 27, 2004) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). In this context, the term "community" means the Northern District of New York. *See id.* (citing *Luciano*, 109 F.3d at 115).

Moreover, parties must state, with specificity, "'the date, the hours expended, and the nature of the work done'" for each attorney. *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting [*N.Y.S. Ass'n for Retarded Children, Inc.*], 711 F.2d at 1148). "'[C]ontemporaneous time records are a prerequisite[;]'" however, attorneys are "'not required to record in great detail how each minute of [their] time was expended,'" but hours that are "'excessive, redundant, or otherwise unnecessary' must be excluded from the calculation. . . ." *United Parcel Serv., Inc.*, 2004 WL 437474, at *3 (internal quotations omitted).

Finally, an award of attorney's fees also includes reasonable out-of-pocket expenses normally charged to fee-paying clients. *See id.* at *6 (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)) (other citation omitted). In this District,

courts have held that costs associated with photocopying and facsimiles, among other things, are reasonable out-of-pocket expenses. *See id.* (citing *O'Grady v. Mohawk Finishing Prods., Inc.*, No. 96-CV-1945, 1999 WL 30988, *7-*9 (N.D.N.Y. Jan. 15, 1999)). Additionally, computerized legal research costs are also recoverable. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 99 (2d Cir. 2004) (citations omitted).

### *1. Reasonable Hourly Rate*

In this case, Plaintiffs seek an hourly rate of $206 for the legal services of Daniel E. Kornfeld and Jennifer A. Clark and an hourly rate of $175 for the legal services of Daniel R. Brice. Plaintiffs also seek an hourly rate of $113 for the services that the paralegals provided. Plaintiffs assert that, based upon the experience, reputation, and abilities of the attorneys and the paralegals handling this case, these are reasonable hourly rates.

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, the court announced that reasonable hourly rates for attorneys in this District are "$210 for experienced attorneys, $150 for associates with more than four years experience, $120 for associates with less than four years experience, [and] $80 for paralegals . . . ." No. 03-CV-502, 2005 WL 670307, *6 (N.D.N.Y. Mar. 22, 2005). In light of Attorneys Kornfeld's and Clark's substantial experience litigating ERISA cases, the Court finds that their request for an hourly rate of $206 is reasonable.[3]

---

[3] Mr. Kornfeld has been associated with Blitman & King LLP since October 2003. *See* Affidavit of Daniel Kornfeld, sworn to November 11, 2005 ("Kornfeld Aff."), at ¶ 26 & n.1. He
(continued...)

As to Attorney Brice, the Court finds that an hourly rate of $120, rather than the requested hourly rate of $175, is reasonable because he graduated from law school in 2003 and the New York State Bar admitted him in 2004, which indicates that he has less than four years experience. *See* Kornfeld Aff. at ¶ 26 & n.1.  Moreover, relying upon *Arbor Hill* and given the Court's familiarly with the rates charged for paralegal services in this District, the Court finds that an hourly rate of $80, rather than the requested hourly rate of $113, is reasonable for paralegal work.

### 2. *Award of Attorney's Fees and Costs*

To support their request for attorney's fees and costs, Plaintiffs provided the Court with an itemized statement of the legal services that Mr. Kornfeld, Ms. Clark, and Mr. Brice performed, as well as the services that the paralegals performed.[4]  *See* Dkt No. 8 at Exhibit "I;" Dkt. No. 12 at Exhibit "C."  These itemized statements contain the names of the individuals who

---

[3](...continued)
received his J.D. in 1998 and his L.L.M. in 2001.  *See id.*  The Maryland State Bar admitted him in 1998, the District of Columbia Bar admitted him in 1999, and the New York State Bar admitted him in 2004.  *See id.*  He has substantial experience in labor law matters.  *See id.*

Ms. Clark has been associated with Blitman & King LLP since 1981.  *See id.*  The New York State Bar admitted her in 1982.  She has substantial experience in labor law matters.  *See id.*

[4] In Plaintiffs' original filings, they indicated that Mellissa A. Eusepi, a paralegal, performed 2.0 hours of paralegal work.  In Plaintiffs' supplemental filings, they indicated that another paralegal performed an additional 2.0 hours of paralegal work.  Plaintiffs' papers do not name that paralegal; rather, they note that "CWF" performed 2.0 hours of work, calculating recent payments and reports.  Plaintiffs' attorneys billed Plaintiffs $236 for these services, which is consistent with their billing rate for paralegal services, $118 an hour.

-10-

performed the work, the amount of time that they spent performing the work, a brief description of the work that they performed, and the date on which they performed the work. *See id.* None of the work appears excessive, redundant, or unnecessary. Accordingly, and consistent with the above-stated rates, the Court awards Plaintiffs attorney's fees calculated as follows:

| Attorney/Paralegal | Hourly Rate | Hours Worked | Total |
| --- | --- | --- | --- |
| Daniel E. Kornfeld | $206 | 12.8 | $2,636.80 |
| Jennifer A. Clark | $206 | 3.05 | $628.30 |
| Daniel R. Brice | $120 | 8.90 | $1,068.00 |
| Paralegals | $80 | 4.0 | $320.00 |
|  |  |  | **$4,653.10** |

Plaintiffs also seek reimbursement for $95.60 in copying costs, $1.46 for computer research, $250.00 in filing fees, and $81.00 for service of process costs. In total, Plaintiffs are entitled to an award of costs in the amount of **$428.06**.

In sum, the Court awards Plaintiffs attorney's fees and costs in the amount of **$5,081.16**.

F.     **Audit Costs**[5]

The CBA states that, "[i]f it has been determined that an employer is delinquent, said employer will be assessed liquidated damages, accountant fees and attorney fees." *See* Kornfeld

---

[5] Plaintiffs conducted an audit of Defendant Corporation's books and records in February 2006.

-11-

Aff. at Exhibit "D" at Art. 17 § 4. Additionally, the Collections Policy states that, where the Funds counsel commences legal proceedings against the Employer, "the Employer is obligated to reimburse the Funds for all attorneys' fees and paralegal fees, auditing fees, and all costs and disbursements incurred by the Funds in attempting to collect the Funds' monies." *See id.* at Exhibit "F" at § 1(3). Plaintiffs request, and the Court awards Plaintiffs, audit fees in the amount of **$2,448.20**.

### G.     Post-Judgment Interest

Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Courts have awarded post-judgment interest on attorney's fees and costs, *see Raff v. Maggio*, 746 F. Supp. 1207, 1208 (E.D.N.Y. 1990) (citations omitted), and on an award of contributions and deductions, interest, and liquidated damages in ERISA cases, *see I.B.E.W. Local No. 910 Welfare, Annuity, & Pension Funds v. Dexelectrics, Inc.*, 98 F. Supp. 2d 265, 277 (N.D.N.Y. 2000).

Accordingly, the Court awards Plaintiffs post-judgment interest on their entire monetary judgment at the statutory rate.

### III. CONCLUSION

After carefully considering the file in this matter, Plaintiffs' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiffs' motion pursuant to Rule 55(c) of the Federal Rules of Civil

Procedure for entry of a default judgment against Defendants, jointly and severally, is **GRANTED** in the amount of **$93,602.75**;[6] and the Court further

**ORDERS** that Plaintiffs' motion pursuant to Rule 55(c) of the Federal Rules of Civil Procedure for entry of default judgment against Defendant Corporation is **GRANTED** in the additional amount of **$18,431.31**;[7] and the Court further

**ORDERS** that Plaintiffs are entitled to post-judgment interest, calculated pursuant to 28 U.S.C. § 1961, on the entire amount of the judgment; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Plaintiffs and close this case.

**IT IS SO ORDERED**.

**Dated:** June 30, 2006
  Syracuse, New York

*[signature]*
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[6] The total amount is calculated as follows: **$63,112.95** in delinquent and unpaid fringe-benefit contributions, **$9,322.21** in accrued interest, **$13,638.23** in liquidated damages, **$5,081.16** in attorney's fees and costs, and **$2,448.20** for audit costs.

[7] The total amount is calculated as follows: **$11,307.04** in delinquent or unpaid contributions, **$3,297.29** in accrued interest, and **$3,826.98** in liquidated damages.